[No. 3128. Decided October 19, 1901.]

FABIAN S. POTVIN, *Appellant*, v. DENNY HOTEL COM-
PANY *et al., Respondents.*

CORPORATIONS — INSOLVENCY — FRAUDULENT EXECUTION SALE — PUR-
CHASE BY DIRECTOR — ACTION TO SET ASIDE — SUFFICIENCY OF COM-
PLAINT.

An alleged fraudulent sale on execution of the real estate of an
insolvent corporation to one of its directors and officers will not
be set aside upon a complaint attacking it, where it appears from
the complaint itself not only that the sale was duly confirmed by
the court, without anything negativing plaintiff's knowledge of
the fraud at the time of the confirmation, but that plaintiff as a
judgment creditor had received the proceeds of the sale and
thereby in effect affirmed its validity.

SAME.

A complaint in an action asking a personal judgment against
a director and officer of an insolvent corporation, on the ground
that he had procured a fraudulent sale on execution of the cor-
porate realty to himself at a grossly inadequate price, does not
state facts sufficient when the complaint alleges that he still holds
the property so purchased by him for the benefit of himself and
his associates, since the proper remedy in such case, where the
director has not converted the corporate property to his own use
or diverted it to other uses than the payment of corporate debts,
would be an action to set aside the transfer.

FRAUDULENT CONVEYANCES—RIGHT OF LIEN HOLDER TO COMPLAIN.

One who holds a judgment lien upon real property cannot com-
plain of a fraudulent conveyance of the premises, since it is
necessarily made subject to his lien, which remains unimpaired,
even though the transfer is fraudulent as to other creditors.

SAME — TRANSFER OF CORPORATE ASSETS TO DIRECTOR — LIABILITY OF
GRANTEE.

Where the personal property of an insolvent corporation has
been transferred to a director for the purpose of placing it beyond
the reach of creditors, a judgment creditor is entitled to recover
its value from the grantee.

Appeal from Superior Court, King County.—Hon.
E. D. BENSON, Judge. Reversed.

*Patterson & Easly,* for appellant.

*E. F. Blaine* and *Lee De Vries,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—The complaint herein alleges that the Denny Hotel Company of Seattle now is, and during the times in the complaint mentioned was, a corporation duly organized and existing under and by virtue of the laws of the state of Washington, its principal place of business being at Seattle; that the said Denny Hotel Company was incorporated for the purpose of building a large hotel in the city of Seattle, and operating the same when completed, and which said hotel was to be built upon certain real estate described in the complaint; that prior to the commencement of this action said Denny Hotel Company commenced the building of said hotel, and nearly completed the same, when, on account of financial embarrassment of said company, the work was stopped and abandoned, and the said company quit and abandoned the business for which it was incorporated, and that said real estate and said building in its uncompleted condition at the time of the sheriff's sale mentioned in the complaint was and now is worth the sum of $100,000; that this plaintiff is the contractor who undertook and agreed to construct said building, and the defendant A. A. Denny was and now is a stockholder in said corporation, and a director and the president thereof; that on March 6, 1896, this plaintiff obtained a judgment and decree in the superior court of King county against the said Denny Hotel Company for $186,386.78, with interest on said sum at the legal rate from said March 6, 1896, and by virtue of said decree the amount so due plaintiff was adjudged a valid lien upon the said real estate; that at the time the

building of said hotel was stopped there was a large amount of lumber, mill work, hardware finishings, plumber's materials, etc., in and about the same, which had been furnished by the plaintiff to said Denny Hotel Company, but which said property was not a part of said building, and at all times was and now is in the actual use and possession of the plaintiff, who held and now holds the same as security for the purchase price thereof, and that the value of said property at the time of the conveyance thereof in the complaint mentioned was and now is the sum of $25,000, which amount was due plaintiff as purchase price for the same; that, in addition to the amount due plaintiff, the said company was and is indebted to other persons in a large amount, exceeding, together with plaintiff's claim, the sum of $400,000, and said company was hopelessly insolvent, and that prior to the commencement of this action an execution was issued on plaintiff's judgment and placed in the hands of the sheriff of King county for service, and had been duly returned wholly unsatisfied; that said defendant A. A. Denny, desiring and intending to defraud plaintiff and other creditors of said Denny Hotel Company, and designing and intending to hinder, delay, and prevent the collection of plaintiff's claim and the claims of other creditors of said defendant company, and knowing that, if said land and premises were sold on execution under plaintiff's judgment, no one would have the right to redeem from such sale, except only said defendant corporation or its assigns, entered into an agreement and understanding with Dexter Horton & Co., of Seattle, and Huttig Brothers Manufacturing Company, a corporation, by reason of which they intended to and did destroy and stifle all competition at the sheriff's sale of said real estate, and prevented the same from selling

at its fair value at said sale; that said Denny is a stock-holder and officer of said Dexter Horton & Co., Bankers, and each and all of the parties mentioned in this para-graph are persons of large financial means and resources; that it was understood and agreed that the parties last mentioned should buy said real estate at said sheriff's sale at as low a figure as possible and hold the same in certain (designated) proportions; that in carrying out said contract and agreement said Denny, after execution and order of sale had been issued on plaintiff's judgment, and before sale thereunder had taken place, procured from the defendant corporation a deed conveying to him all its equity of redemption and interest in said real estate, and also all the personal property hereinbefore mentioned, which said conveyance was made for the purpose afore-said, and accepted by said Denny for the purpose of aid-ing in acquiring title at sheriff's sale of said real prop-erty, and that said conveyance was made to said Denny without consideration, and with the knowledge on his part that said corporation was hopelessly insolvent and had abandoned the business for which it was organized, and that said real property was all the real property and said personal property was all the personal property of said cor-poration; that having made said agreement as aforesaid, and having procured said deed and conveyance, the said Denny, Dexter Horton & Co., and Huttig Brothers Man-ufacturing Company through a representative present at the sale of said real property under execution of plaintiff's judgment, held on November 26, 1897, bid in all of said property for the sum of $17,300, and said sale was there-upon duly reported to the said court for confirmation, but the court refused to confirm the same and set aside said sale on account of the gross inadequacy of the bid

therefor; that afterwards, and on January 8, 1898, a second sale under plaintiff's execution was had, and all of said real estate was again sold to a representative of the parties above mentioned, which said sale was afterwards confirmed by the court, and the said property is now held for the benefit of the above mentioned parties; that the fair and reasonable cash value of said property so sold at said time was $100,000, and there were parties ready, able, and willing to bid said sum at said sale had it not been for the agreement made by said A. A. Denny and the other parties mentioned, and said conveyance made to said A. A. Denny, under which he claims the right to redeem said property from a sale made to any party other than those mentioned, namely, Dexter Horton & Co. and Huttig Brothers Manufacturing Company, and said A. A. Denny is a person of such large means that he is able at all times to make such redemption; that by reason of the facts above stated the plaintiff and other creditors have been hindered, delayed, and prevented from enforcing and collecting any portion of their said claims, and no part of the same has been paid, except the sum of $17,320, paid as aforesaid, and that plaintiff is without any adequate remedy at law; that Mary A. Denny, wife of said A. A. Denny, has an interest, lien, or demand in said property so conveyed to said A. A. Denny by said deed and by said bill of sale. The prayer of the complaint is that the conveyance to A. A. Denny be adjudged fraudulent and made for the purpose of hindering, delaying, and preventing the collection of claims due plaintiff and other creditors from the defendant, Denny Hotel Company of Seattle; that said A. A. Denny be required to pay into court for the use and benefit of plaintiff and other creditors of said Denny Hotel Company the difference between the value of said real estate and the amount bid therefor, to-wit, $82,680; that

he also he required to pay into court for the use and benefit of plaintiff the value of said personal property, to-wit, the sum of $25,000; that plaintiff recover from the defendants, and each of them, his costs of suit herein, and that the court make such other and further order as may be just and equitable; and that the plaintiff have general relief. It appears from the deed from the hotel company to Denny, which is mentioned in the complaint and made a part thereof, that the consideration for the conveyance was the release and discharge by Denny of all claims of every kind held by him against the company. The defendants interposed a demurrer to this complaint on the ground that it failed to state facts sufficient to constitute a cause of action against them or either of them. The demurrer was sustained, and, plaintiff having declined to amend or plead further, the court entered judgment in favor of the defendants, and the plaintiff thereupon appealed to this court.

From the foregoing statement it will be seen that the sole question presented for determination on this appeal is whether the complaint states a cause of action, and for the purposes of this case the material allegations of the complaint must be deemed to be true; and, if the facts stated entitled the appellant to any relief, it follows that the judgment appealed from must be reversed. While it seems to be claimed that the execution sale to the respondent Denny was fraudulent as to creditors of the insolvent corporation, Denny Hotel Company, it will be perceived that appellant does not seek by this action to have it set aside on that account. His object is to obtain a personal judgment against the respondent, A. A. Denny, for the difference between the amount bid and paid for the property by Denny at that sale and $100,000, the alleged value of the real estate at the time of the sale. It is earnestly insisted by the

learned counsel for the appellant that the respondent Denny, who was president of the hotel company, had no right to bid in the property at the sale under appellant's execution at a price much less than its real value, and thereby prevent creditors from collecting their just claims and demands against the company, and that he therefore ought to be compelled to pay into court for the benefit of the appellant the difference between the fair value of the property and the amount paid for it. The weight of authority is in favor of the rule that a director of a corporation may not purchase the corporate property at a foreclosure or execution sale thereof, except subject to the right of the corporation (and, in some cases, of its creditors) to repudiate the sale and demand a re-sale. *Hoyle v. Plattsburgh & M. R. R. Co.,* 54 N. Y. 314 (13 Am. Rep. 595); Cook, Stock & Stockholders (3d ed.), § 653. This principle results from the relation of a director to the corporation of which he is a member. The office of a director is fiduciary in its character, and ordinarily a director or officer of a corporation is a trustee, or at least a *quasi trustee,* of the company and the stockholders. But after a corporation becomes insolvent its assets constitute in equity a trust fund for the payment of its debts, and the directors or managing officers are held to be trustees for the company's creditors. Cook, Stock & Stockholders, § 661; *Thompson v. Huron Lumber Co.,* 4 Wash. 604 (31 Pac. 25). And in the event of the insolvency of a corporation its directors are bound to manage its assets with scrupulous regard for the equitable rights of creditors; and a court of equity will not permit them to use or dispose of the property of the corporation for their own benefit, or to purchase and hold it for their private purposes, if objection thereto be made at the proper time by the corporation or its creditors. In this case it was the

duty of Mr. Denny, as director and president of the hotel
company, to endeavor to secure at the sheriff's sale the
highest price for the property, or at least, what it was
fairly worth.   But as purchaser it was his interest to buy it
at the lowest price possible, and he had no right thus to
seek his own profit regardless of the obligations of his
trust.   *Jackson v. Ludeling,* 21 Wall. 616.   A sale of cor-
porate property under judicial process to a director of the
corporation will usually be set aside in equity as
contrary to public policy, even though no actual fraud
or actual advantage to the purchaser be shown.   *Hoyle
v. Plattsburg & M. R. R. Co., supra.*   Speaking of
a director's purchase of the property of the corporation at
a foreclosure sale thereof, Mr. Cook observes:

"If the director purchases at such a foreclosure sale he
holds the property as trustee for the benefit of the cor-
poration and the stockholders.   Upon being repaid the
price he gave therefor, he must make over the property to
the corporation."   Cook, Stock & Stockholders, *supra.*

It thus appears that such purchases by directors are
voidable at the instance of the corporation and the stock-
holders, but they may also be avoided in certain cases by
creditors of the corporation, especially if the corporation
be insolvent.   But in this instance it does not appear that
the appellant is entitled to have the sale made under his
execution, or, rather, his order of sale, set aside, for the
reasons (1) that he does not ask that the sale be annulled
or vacated; and (2) that the allegations of his complaint
do not entitle him to such relief.   It must be borne in
mind that the real estate in question here was twice sold
by the sheriff, under regular orders of sale, for the pur-
pose of satisfying appellant's lien upon the property, and
that the second sale was confirmed by the court, presum-
ably with the consent of appellant, as nothing to the con-

trary appears in the record. It is true that sales such as that under consideration will, under proper circumstances, be set aside for fraud, when clearly made out, even after confirmation. But, in order to justify the court in setting aside the sale, it must clearly appear that the fraud alleged was unknown to the person objecting to the sale at the time of the confirmation. The law on this subject is laid down by. a learned author as follows:

"It may be accepted as 'a general rule, that when the cause alleged is fraud, the application to set aside, if after confirmation, must satisfy the court that the fraud was unknown to those complaining at the time of confirma· tion." Rorer, Judicial Sales (2d ed.), § 550.

'See, also, to the same effect, 17 Am. & Eng. Enc. Law (2d ed.), p. 996, and cases cited.

In the case at bar it is not shown that the alleged fraudulent acts on the part of the respondent Denny were unknown to appellant at the time of confirmation, and the complaint is therefore radically defective in that respect. But there is another reason why this sale cannot now be claimed to be invalid by the appellant; and that is, he has by his own acts affirmed it. It is shown by the complaint that he received the proceeds of the sale, and it does not appear that he has ever offered to repay to the respondent the amount of the purchase price of the premises; and, such being the facts, he is estopped from denying the validity of the sale.

"A party who claims the proceeds of the sale, judicially affirms the validity thereof, and cannot afterwards attack the sale for nullity unless it be shown that the judicial admission was made through an error of fact." 17 Am. & Eng. Enc. Law (2d ed.), 996.

See, also, Bump, Fraudulent Conveyances (4th ed.), § 458.

It may be claimed, however, that, inasmuch as the appellant does not seek to set aside the sheriff's sale on the ground of fraud (though it is argued that the sale was in fact fraudulent as to creditors), the principles above announced are not applicable to this case. But we are of the opinion that if this sale was not fraudulent as to appellant, or if fraudulent and appellant cannot now avail himself of the consequences of the fraud, he has no cause for complaint on account thereof. The directors of a corporation are not ordinarily personally responsible for its debts. Primarily the creditors of a corporation must rely upon its assets, or, in other words, its capital, for the satisfaction of their claims; and, so long as the corporate property can be reached by directors and subjected to the payment of their demands, the directors are not personally liable therefor. But if the directors convert the company's assets to their own use, or divert its property to purposes other than the payment of the corporate debts, they thereby render themselves liable to creditors to the extent of the value of the assets so converted, or of the property so diverted, for the reason that by such acts they violate their trust and directly invade the rights of creditors. But it will be noticed that the complaint herein alleges that the respondent Denny still holds the property purchased by him at the sheriff's sale for the benefit of himself and his associates, and, that being so, we think that a personal judgment against him for the value of the property, or for the difference between its value and the amount paid for it, would be improper. The property, being still in the hands of the said respondent, is impressed with a trust in favor of creditors, of which appellant, if he were in a position to do so, might avail himself. If Mr. Denny had conveyed this property to a third person, who purchased it in good faith and without notice of the trust, the case

would be different from that here presented, and the principle contended for by counsel for appellant would be applicable to the facts. In speaking of decrees in cases of fraudulent conveyances, Mr. Bump says:

"If the transfer is found to be void, the decree should not be a personal decree against the grantee for the debt, or for the value of the property where they may still be reached by the creditor, but should be a decree vacating the transfer." Bump, Fraudulent Conveyances (4th ed.), § 576.

See, also, Wait on Fraudulent Conveyances (2d ed.), § 177 *et seq.* And no case has been cited by appellant's counsel holding that a money judgment is proper upon a state of facts similar to those in the case at bar.

It is strenuously contended on behalf of appellant that, in any event, the private sale made by the hotel company to Denny, its president, was, under the admitted facts, fraudulent and void as to appellant, and should therefore be set aside. Is this contention tenable? is the next question for consideration. Of course, if the appellant was not in some way injured or defrauded by the transfer,— and we think he was not,—he has no right to complain. It is admitted that at the time of the sale appellant had a valid lien on the hotel premises, and it therefore follows that the transfer to Denny was necessarily subject to the lien. A conveyance under such circumstances is not deemed fraudulent as to creditors. In Wait on Fraudulent Conveyances (2d ed.), § 125, the author says:

"A conveyance is not considered fraudulent as to a creditor whose debt is secured by judgment or other lien upon the land transferred. The grantee necessarily takes subject to the lien, and the creditor may pursue the land in the same manner as if it had been conveyed to one who had purchased in good faith for a full consideration. He may follow the land irrespective of changes in the title,

whether honest or dishonest. A judicial sale upon his lien vests in the purchaser the title which the debtor had when the lien attached, and of course divests the title of the debtor's grantee. The creditor, therefore, stands in no need of aid from a court of equity to revoke the debtor's transfer."

And the doctrine thus stated accords with both reason and authority. In *Armington v. Rau,* 100 Pa. St. 168, the court, in considering this question, observes:

"The debtor conveys subject to the lien. He has a right, upon such condition, to sell or give away his land, and if he does so fraudulently, the grantee's title is good against all the world, except creditors and persons intended to be hindered, delayed or defrauded. A prior lien creditor is not such person. The conveyance, whether *bona fide* or fraudulent as respects creditors who have no liens, is no obstruction or hindrance to the enforcement of payment of the prior lien."

See, also, *Haak's Appeal,* 100 Pa. St. 62, and *Zuver v. Clark,* 104 Pa. St. 226, where the same rule is announced. As we have seen, the appellant did in fact cause the premises to be sold, as he had a right to do, upon his lien; and, according to the authorities above cited, the title of the grantee Denny was thereby divested. The fact that Denny, by reason of the quitclaim deed of the premises made to him by the defendant corporation, might have had a right to redeem from the judicial sale if the property had been purchased at that sale by some other person, is, under the existing circumstances, of no consequence whatever. Viewed in another light, it can hardly be said that this sale would have been void as to appellant, for the reason that at the time of the conveyance the hotel company, appellant's debtor, had no beneficial interest in the property conveyed. It is undisputed that at the time of the transfer the premises were incumbered by appellant's lien for

nearly twice its value; and, such being the fact, the sale was not void as to appellant, even though it was made with the intent to place the premises beyond his reach. Wait, Fraudulent Conveyances, §§ 15 and 23. As we have already intimated, such transfers as that now under consideration are not void on their face, but only voidable. Upon this proposition the following authorities are especially in point: 5 Thompson, Commentaries on Corporations, § 6530; *Jones v. Mechanical Co.,* 38 Ark. 20. In *Wilkinson v. Bauerle,* 41 N. J. Eq. 635 (7 Atl. 514),—a case cited and relied on by appellant,—it appeared that the directors of a corporation conveyed all the corporate assets to one of their number (the president), who thereupon, with others, organized a new corporation, to which the property of the old company was transferred and put beyond the reach of creditors. The conveyance to the president of the company was attacked by creditors, who claimed that the sale was fraudulent and void, and prayed that the directors who participated in it should be decreed to pay them and such other creditors as should come in, the amount due them from the company, and that the sale should be declared invalid and fraudulent. The court held, not that the sale was absolutely void, but that it devolved on the directors to establish the good faith of the transaction, and that the sale produced the full value of the property; that if not made in good faith, or if it did not produce the full value of the property, the directors taking part in the sale were liable to creditors for what was thus lost. We find no fault with the decision in that case, but it is not applicable to the facts of this case for the reason that it does not appear here, as it did there, "beyond dispute," that appellant was deprived by the conveyance to the respondent of the opportunity to resort to the property to enforce payment of his debt. And for the

same reason the case of *Rankin v. Gardner*, 34 Atl. 935, cited by appellant, is not applicable here.

But notwithstanding our conclusion that the appellant is not entitled, upon the admitted facts, to have the conveyance of the real estate set aside, and the property again subjected to his execution, we are of the opinion that, so far as the personal property is concerned, the complaint does state a valid cause of action. If, as alleged, appellant has a lien upon it prior in time to the transfer, he has a right to have the lien foreclosed, and the property sold in satisfaction thereof. But if, under our statute, he can claim no lien for the purchase price of the chattels as alleged, he, being a judgment creditor, is nevertheless entitled to have the bill of sale set aside. If the transfer was made, as averred in the complaint, without consideration, it is voidable at the suit of a creditor, for an insolvent corporation has no right to give away its property to the prejudice of its creditors. Such a corporation in paying its debts has not even the right to make preferences in favor of directors who may be creditors.

For the foregoing reasons the judgment is reversed and the cause remanded, with instructions to overrule the demurrer to the complaint.

REAVIS, C. J., and DUNBAR and FULLERTON, JJ., concur.